UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOUTHWEST AVIATION SPECIALISTS, LLC, JET CAPITAL, and MIDWEST AIR EXPRESS, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 10-CV-0089-CVE-TLW ) |
| UNITED STATES OF AMERICA, DEPARTMENT OF THE NAVY AND UNITED STATES MARINE CORPS, CARDINAL AVIATION, INC., CAROLINA CONSTRUCTION CONSULTANTS, a d/b/a of THOMAS DAILY,[1] HCC INSURANCE HOLDINGS, INC., and U.S. SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court are Defendant United States of America's Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 35) and Plaintiffs' [sic] Motion for Summary Judgment against Defendant, United States (Dkt. # 37). Defendants United States of America and Department of the Navy and United States Marine Corps (collectively referred to as the United States) ask the Court to enter summary judgment in their favor on plaintiff Jet Capital's negligence per se claim. Plaintiff Jet Capital has also filed a motion for summary judgment on its negligence per se claim, and asks the Court to deny the United States' motion for summary judgment.

---

[1] Plaintiffs have named this defendant as "Thomas Daily" in the case caption, but the evidence attached to the motions for summary judgment shows that this defendant's name is actually "Thomas Dailey." Dkt. # 35-5, at 8. The Court will refer to this defendant as "Thomas Dailey" in this Opinion and Order.

**I.**

Jet Capital owns a Beechcraft Model C90 King Air aircraft, Federal Aviation Administration (FAA) registration number N21SP (the Aircraft). Dkt. # 35-2, at 2. David Guzman is the general manager of Jet Capital, and he is also the owner of Midwest Air Express, LLC (Midwest) and Southwest Aviation Specialtists, LLC (Southwest). On October 12, 2007, Midwest leased the Aircraft to Cardinal Aviation, Inc. (Cardinal) and the lease agreement obligated Cardinal to maintain the aircraft in accordance with FAA regulations:

> c. <u>Maintenance</u>. LESSEE shall maintain the AIRCRAFT in compliance with FAR'S and the manufacturer's maintenance manuals, specifically FAR Part 65.81. LESSOR agrees to, at LESSEE option, to [sic] provide the aircraft inspection services up to and including only the Phase I-IV inspection as called out [sic] for in the manufactures [sic] maintenance manual. This service shall be provided at LESSOR's base of operations and shall only include INSPECTION of the aircraft. Correction of findings are NOT included and will not be included in LESSOR's obligations. LESSOR shall not pay for any services for the aircraft at any other location under any circumstances.

Dkt. # 35-5, at 4. Cardinal represented that it was owned by Thomas Dailey, and it took possession of the Aircraft in October 2007.

Dailey, doing business as Carolina Construction Consultants, agreed to rent the Aircraft or an acceptable equivalent to the United States Marine Corps (Marine Corps) at an hourly rate. The contract clearly states that the Marine Corps did not undertake any obligation to perform maintenance on the Aircraft:

> **Safety/Maintenance**
>
> The aircraft shall comply with FAA and OPNAVIST 4790.24 Regulations for all safety, maintenance, and flight issues. The government (military pilot) will inspect the aircraft prior to each flight. The contractor [Carolina Construction Consultants/Thomas Dailey] is responsible for all costs associated with normal scheduled aircraft maintenance and maintenance as a result of regular wear and tear

of flying an aircraft. The Government is only responsible for maintenance or repairs resulting from military pilot error. The government reserves the right to tour/inspect the maintenance facility. Scheduled maintenance shall be coordinated and performed, to the best of the contractor's ability, without disrupting the terms and conditions of this contract.

Dkt. # 35-6, at 5-6. On April 25, 2008 at approximately 10:30 a.m., the Aircraft departed Baton Rouge Metropolitan Airport (BTL) under the control of a Marine Corps pilot. The Aircraft landed at BTL approximately one hour later and the torque knee of the right main landing gear failed during the landing. No persons were injured during the landing but the Aircraft was damaged.[2]

Prior to the incident, on February 22, 2002, the FAA had issued Airworthiness Directive 2002-01-10 (AD), requiring an inspection of the main landing gear torque knees for fatigue cracks on the Beechcraft Model C90 within 100 hours time in service of issuance of the AD. Dkt. # 35-8. If no cracks were found during this initial inspection, another inspection had to take place within 1,000 hours time in service. On January 3, 2003, an inspection of the main landing gear torque knees of the Aircraft was performed and no cracks were found. Dkt. # 35-9, at 2. The Aircraft had 9,327.7 hours time in service at the time of the inspection, and the next inspection for compliance with the AD was required before the Aircraft reached 10,327.7 hours time in service. Id. At the time the Aircraft was leased to Cardinal, the Aircraft had 10,306.8 hours time in service. Dkt. # 35-7, at 2.

On February 9, 2010, plaintiffs filed this lawsuit alleging negligence and breach of contract claims against the United States, and alleging negligence, breach of contract, and fraud claims against the other defendants. Dkt. # 2, at 5-7. Plaintiffs relied on the Federal Tort Claims Act, 28

---

[2] Plaintiffs refer to the incident as a "crash." Dkt. # 38, at 6. This term is apparently used to imply pilot error or negligence, but there is no factual basis for plaintiff's use of the word "crash" to the describe the landing during which the Aircraft's landing gear failed.

3

U.S.C. § 1346 (FTCA), as a waiver of the United States' sovereign immunity. Plaintiffs requested two extensions of time to serve defendants and both requests were granted, and plaintiffs' deadline to properly serve defendants was September 2, 2010. Dkt. # 10. All defendants except Cardinal and Carolina Construction, a d/b/a of Thomas Dailey, have entered an appearance. Plaintiffs have not filed returns of service showing that Cardinal or Carolina Construction, a d/b/a of Thomas Dailey, were served. The United States filed a motion to dismiss the complaint[3] and plaintiffs filed an amended complaint (Dkt. # 22). In the amended complaint, the sole claim asserted against the United States by any plaintiff was a claim for negligence per se alleged by plaintiff Jet Capital.[4] Dkt. # 22, at 5. The United States and Jet Capital each seek summary judgment on Jet Capital's negligence per se claim. Plaintiffs' claims against defendants HCC Insurance Holdings, Inc. and U.S. Specialties Insurance Company have been dismissed with prejudice. Dkt. # 46.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

---

[3] The United States argued, inter alia, that the Court lacked subject matter jurisdiction over any tort claim asserted by Southwest and Midwest, because the administrative notice of tort claim was filed by Jet Capital only. Dkt. # 16, at 3-5.

[4] Plaintiffs' amended complaint asserts claims against the remaining defendants for breach of contract only. Dkt. # 22, at 5-7.

party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

The United States argues that plaintiff Jet Capital's FTCA claim is governed by the substantive law of Louisiana, and Louisiana does not recognize a claim for negligence per se. The United States also argues that a tort under Louisiana law may not be premised on an alleged violation of federal regulations and, even if Jet Capital could identify a legal duty owed by the United States, they have failed to offer any evidence of causation. Jet Capital cites LA. CIV. CODE

5

ANN. art. 3542, and asserts that federal regulations may create a tort duty giving rise to a negligence claim under Louisiana law.

Under the FTCA, federal district courts have exclusive jurisdiction:

> on claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The Court must look to the substantive law of the state where the act or omission occurred to determine whether the government is liable. Miller v. United States, 463 F.3d 1122, 1123 (10th Cir. 2006). There is no dispute that the Aircraft was damaged in Louisiana and that Louisiana law governs Jet Capital's tort claim against the United States. Dkt. # 35, at 9; Dkt. # 38, at 3. Louisiana law does not recognize a claim for negligence per se. Galloway v. State, 654 So. 2d 1345, 1347 (La. 1995); Boyer v. Johnson, 360 So. 2d 1164, 1169 (La. 1978). Under the FTCA, federal regulations do not provide an independent basis for recovery under the FTCA, and a federal regulation will create a tort duty only if a private individual would liable under the applicable state law for a violation of the same regulation. Klepper v. City of Milford, Kansas, 825 F.2d 1440 (10th Cir. 1987).

Plaintiffs' amended complaint does not allege a general negligence claim or assert that the United States breached a duty created by Louisiana law. Instead, the amended complaint clearly alleges that the basis for the government's liability is the alleged violation of FAA regulations. Dkt. # 22, at 5. Jet Capital concedes that Louisiana does not recognize a claim for negligence per se and that Louisiana law does not create a duty giving rise to a negligence claim in this case. Dkt. # 38, at 2-3 ("In this case however, no duty under Louisiana law exists . . ."). Jet Capital argues that

Louisiana law allows for the creation of a tort duty by reference to federal regulations under LA. CIV. CODE ANN. art. 3542, which states that "[e]xcept as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue." This is Louisiana's choice of law rule governing contract claims and it does not allow plaintiff to use federal regulations to create a tort duty as a matter of Louisiana law. Even if the Court were to consider whether the United States assumed a duty to Jet Capital in its contract with Cardinal, that contract provides that the United States expressly declined to assume liability for losses resulting from the failure to perform "normal scheduled aircraft maintenance." Dkt. # 35-6, at 5. Thus, plaintiff may not rely on the contract between the United States and Cardinal as the source of a tort duty to hold the United States liable for the alleged failure to conduct the inspection required by FAA regulations. The United States is entitled to summary judgment on Jet Capital's negligence per se claim, and Jet Capital's motion for summary judgment should be denied.[5]

## IV.

Plaintiffs have alleged breach of contract claims against Cardinal and Carolina Construction Consultants, a d/b/a of Thomas Dailey, but these defendants have not entered an appearance and plaintiffs have not filed returns of service showing that these defendants have been served. Plaintiffs' extended deadline to serve these defendants was September 2, 2010, and it does not appear that plaintiffs properly served these defendants. Under Fed. R. Civ. P. 4(m), the Court may sua sponte dismiss a party that has not been timely served after giving the plaintiff an opportunity

---

[5] The United States has filed a motion to reset the pretrial conference and set this matter for a bench trial. Dkt. # 45. This motion is moot based on the Court's entry of summary judgment in favor of the United States.

7

to show cause why the party has not been served. Sanders v. Southwestern Bell Telephone, L.P., 544 F.3d 1101, 1111 (10th Cir. 2008). The Court will provide plaintiffs an opportunity to show cause why Cardinal and Carolina Construction Consultants, a d/b/a of Thomas Dailey, have not been served more than a year after the twice-extended deadline. If plaintiffs do not respond or cannot establish good cause for their failure to serve these defendants, plaintiffs' claims against these defendants will be dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Defendant United States of America's Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 35) is **granted**, and Plaintiffs' [sic] Motion for Summary Judgment against Defendant, United States (Dkt. # 37) is **denied**.

**IT IS FURTHER ORDERED** that the Unopposed Motion by United States of America to Reset Date of Pretrial Conference and to Amend Jury Trial Setting to Bench Trial Setting (Dkt. # 45) is **moot**. The pretrial and trial settings are hereby **stricken**.

**IT IS FURTHER ORDERED** that, within 14 days of entry of this Opinion and Order, plaintiffs are directed to show cause why their claims against Cardinal Aviation, Inc. and Carolina Construction Consultants, a d/b/a Thomas Dailey, should not be dismissed without prejudice under Rule 4(m).

**DATED** this 20th day of October, 2011.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT